DECISION ON OBJECTIONS TO THE MAGISTRATE'S DECISION
{¶ 1} Relator, Pactive Corp./Tenneco Packaging, has filed an original action in mandamus requesting this court to issue a writ of mandamus to order respondent, Industrial Commission of Ohio, to vacate its order that granted permanent total disability compensation to respondent-claimant, Terry J. Harvey, and to issue a new order denying such compensation.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Section (M), Loc.R. 12 of the Tenth District Court of Appeals, who rendered a decision including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate decided the requested writ of mandamus should be denied. Relator has filed objections to the magistrate's decision.
 {¶ 3} In its objections, relator argues that claimant was required to show new and changed circumstances when filing a second motion for permanent total disability and, therefore, relator's claim was barred by res judicata. Relator further argues that the commission failed to adequately explain its decision. In its objections, relator is essentially arguing the same issues that were considered and rejected by the magistrate.
 {¶ 4} In State ex rel. Youghiogheny Ohio Coal Co. v.Indus. Comm. (1992), 65 Ohio St.3d 351, 352-353, the court stated:
Relator initially argues that a denial of permanent total disability compensation should preclude the commission from later awarding such compensation absent an affirmative showing by the claimant of new and changed circumstances. We find, however, that relator's reliance on State ex rel. Firestone Tire Rubber Co.v. Indus. Comm. (1990), 49 Ohio St.3d 283 * * *; State ex rel.Koonce v. Indus. Comm. (1985), 18 Ohio St.3d 60 * * *; State exrel. Manes v. Indus. Comm. (1990), 52 Ohio St.3d 260 * * *; andState ex rel. Casper v. McGraw Edison Serv. (1989),47 Ohio St.3d 113 * * *, however, is misplaced. Casper and Manes were confined to permanent partial and temporary total disability respectively. Firestone and Koonce involved permanent total disability, but said nothing about new and changed circumstances being a prerequisite to commission consideration of a subsequent application for permanent total disability compensation after an initial denial. * * *
 {¶ 5} While relator considers the decision in Youghiogheny Ohio Coal Co. to be "illogical" and a "pariah decision," this court is required to follow decisions of the Ohio Supreme Court. If Youghiogheny Ohio Coal Co. is "fatally flawed," as argued by relator, such "flaws" must be addressed by the Ohio Supreme Court. We also find the magistrate correctly addressed relator's argument that the report of Dr. James P. Bressi and Dr. Paul T. Scheatzle were not some evidence, finding that a physician does not have to specifically state a non-allowed condition did not form part of his decision.
 {¶ 6} Upon a review of the magistrate's decision and an independent review of the record, this court adopts the magistrate's decision as its own and relator's objections are overruled. The requested writ of mandamus is denied.
Objections overruled, writ of mandamus denied.
Lazarus, P.J., and Bryant, J., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State ex rel. : Pactiv Corp./Tenneco Packaging, : Relator, : v. : No. 03AP-1272 Terry J. Harvey and : (REGULAR CALENDAR) Industrial Commission of Ohio, : Respondents. :
 MAGISTRATE'S DECISION Rendered on May 19, 2004 Scott, Scriven Wahoff, LLP, Timothy E. Cowans and C.Bradley Howenstein, for relator.
Barrett Davis, and Thomas E. Davis, for respondent Terry J. Harvey.
Jim Petro, Attorney General, and Keith D. Blosser, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 7} Relator, Pactiv Corp., has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which granted permanent total disability ("PTD") compensation to respondent Terry J. Harvey ("claimant") and ordering the commission to find that claimant is not entitled to that compensation.
Findings of Fact:
 {¶ 8} 1. Claimant has sustained six separate work-related injuries which are relevant to this mandamus action. Claimant's first industrial injury occurred on November 3, 1971, while he was employed with Case Egg Poultry. This claim has been assigned number 71-26756 and has been allowed for: "sprained left wrist and low back." On January 15, 1973, claimant underwent a foraminotomy infusion as L5-S1 as a result of this injury. Claimant sustained his second industrial injury on May 20, 1991, and this claim has been assigned number L219337-22 and has been allowed for: "sprained right arm, shoulder and elbow right shoulder strain." Claimant underwent decompression of the right radial nerve on May 15, 1992. Relator was the employer at the time of this injury. Claimant's third industrial injury occurred on February 16, 1993, and this claim has been assigned number L264494-22 and has been allowed for: "pulled neck." Relator was the employer at the time of this injury. Claimant's fourth industrial injury occurred on February 14, 1994, and this claim has been assigned number 94-582225 and has been allowed for: "right knee contusion, pulled muscle in left side of chest, neuroma right knee." Claimant underwent surgery for this condition in December 1996. Claimant's fifth industrial injury occurred on April 20, 1994, and this claim has been assigned number L272422-22 and has been allowed for: "pulled muscle left forearm and back of neck." Relator was the employer at the time of this injury. Claimant sustained his sixth work-related injury on June 30, 1994, and this claim has been assigned number 0D61605-22 and has been allowed for: "bilateral carpal tunnel syndrome." Claimant underwent left carpal tunnel release on July 21, 1995 and right carpal tunnel release on September 22, 1995. Claimant was off work for 17 and one-half months following this injury. Relator was the employer at the time of this injury.
 {¶ 9} 2. In December 1997, claimant filed his first application for PTD compensation. In support of his application, claimant submitted the report of Anthony D. Vamvas, Jr., M.D., who opined that he was permanently impaired from all sustained remunerative employment due to the combined effects of this claim. By order dated February 5, 2000, the commission denied claimant's application based upon the medical report of George A. Hunter, M.D., who had limited claimant to sedentary work activities with no fine manipulation and no lifting over 20 pounds. The commission also relied upon the vocational report of Joseph M. Cannelongo.
 {¶ 10} 3. In September 2001, claimant submitted his second application for PTD compensation. Claimant's application was supported by the May 3, 2000 report of James P. Bressi, D.O., Director of Pain Management for Cuyahoga Falls General Hospital. Dr. Bressi indicated that he had recently performed a work-screen evaluation on claimant and had determined, based upon the testing, that claimant had not magnified his symptoms and that he was not capable of performing the tasks which were part of the testing. Dr. Bressi explained that relator has significant carpal tunnel problems in both wrists, that he drops things, has numbing pain that radiates from his wrist to his elbows as well as to his hands and fingers. Dr. Bressi further noted that claimant had a severe strain/sprain to this sacram and has low back pain and weakness. Dr. Bressi indicated that it is hard for claimant to hold writing utensils and he would not be able to work at a keyboard. Finding that there were no other procedures, surgeries, or medications that would benefit claimant and increase his ability to function, Dr. Bressi opined that claimant was totally disabled due to his work injuries.
 {¶ 11} 4. Claimant was also examined by commission specialist Paul T. Scheatzle, D.O., who issued a report dated January 11, 2002. Based solely upon the allowed conditions, Dr. Scheatzle opined that claimant had reached maximum medical improvement, that strength testing revealed "markedly decreased grip strength bilaterally at less than 10 kgs for a severe strength deficit which is reliable on repeated testing." (Stip. at 37.) Dr. Scheatzle indicated that claimant was not capable of physical work activity.
 {¶ 12} 5. Dr. Scheatzle completed an addendum to his original report at the request of the commission and provided the percentage of disability attributed to each of claimant's claims. Dr. Scheatzle opined that, as a result of claimant's bilateral carpal tunnel syndrome, he suffered a 42 percent permanent impairment. Dr. Scheatzle assessed a four percent impairment for the pulled muscle left forearm, a five percent impairment for the back of neck, and a five percent impairment for the sprain low back. Dr. Scheatzle noted that the combined permanent impairment rating from all the allowed conditions was 50 percent.
 {¶ 13} 6. Claimant was also examined by Richard J. Reichert, M.D., who, following his examination of claimant, issued a report dated December 27, 2001. Following his objective findings, Dr. Reichert opined as follows: claimant's allowed conditions have become permanent; based upon the allowed conditions, he cannot return to his former position of employment as a truck driver; claimant is capable of work with restrictions (no lifting greater than 20 pounds; avoid repetitive use of wrists and forearms; avoid prolonged walking or standing; no climbing, squatting, kneeling); claimant suffers from chronic fatigue syndrome; claimant has an 18 percent whole person impairment based upon all the allowed conditions.
 {¶ 14} 7. Vocational evidence was also submitted.
 {¶ 15} 8. Claimant's application was heard before a staff hearing officer ("SHO") on March 10, 2003 and resulted in an order granting the application. The SHO relied upon the medical reports of Drs. Bressi and Scheatzle and concluded that, from a medical standpoint alone, claimant was not capable of engaging in sustained remunerative employment. Thereafter, the commission allocated the award based upon the various claims.
 {¶ 16} 9. Relator's request for reconsideration was denied by order of the commission mailed May 10, 2003.
 {¶ 17} 10. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 18} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show that she has a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967),11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986),26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State exrel. Lewis v. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 19} The relevant inquiry in a determination of permanent total disability is the claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus.Comm. (1994), 69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments, but also the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephensonv. Indus. Comm. (1987), 31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v.Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v.Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 20} In this mandamus action, relator raises three issues: (1) the doctrine of res judicata bars the commission from granting claimant's second application for PTD compensation where claimant has not demonstrated a material change between applications; (2) the commission abused its discretion by relying upon the medical reports of Drs. Bressi and Scheatzle because their reports did not acknowledge the effects of claimant's nonallowed conditions on his ability to perform sustained remunerative employment; and (3) claimant's allowed medical conditions alone do not render him permanently and totally disabled; therefore, the commission abused its discretion in failing to consider the nonmedical disability factors. For the reasons that follow, this magistrate finds that relator's arguments lack merit.
 {¶ 21} In its first argument, relator asserts that the commission's denial of claimant's first application for PTD compensation acts as res judicata upon claimant's second application unless the claimant establishes new and changed circumstances in his physical condition as a result of the allowed conditions.
 {¶ 22} Res judicata operates to preclude the relitigation of a point of law or fact that was at issue in a former action between the same parties and which was passed upon by a court of competent jurisdiction. See State ex rel. B.O.C. Group, GeneralMotors Corp. v. Indus. Comm. (1991), 58 Ohio St.3d 199, 200. The doctrine of res judicata applies not only to defenses which were considered and determined, but also to those defenses which could properly have been determined. Id. Furthermore, the principle of res judicata applies to administrative proceedings. However, as the court noted in B.O.C. Group, because of the commission's continuing jurisdiction under R.C. 4123.52, the doctrine of res judicata has only a limited application to compensation cases. Id.
 {¶ 23} Relator cites State ex rel. Westchester v. Bacon
(1980), 61 Ohio St.2d 42, 45, and argues that the doctrine of res judicata should apply unless:
* * * [T]here has been a change in the facts in a given action which either raises a new material issue, or which would have been relevant to the resolution of a material issue involved in the earlier action, neither the doctrine of res judicata nor the doctrine of collateral estoppel will bar litigation of that issue in the later action.
(Emphasis sic.)
 {¶ 24} Bacon involved litigation involving zoning, requests for variances, and changes in zoning regulations. The Bacon
case is not applicable to the facts in the present case.
 {¶ 25} In State ex rel. Hoover Co. v. Indus. Comm. (1995),72 Ohio St.3d 387, the court was faced with the question of whether a finding terminating temporary total disability compensation after concluding that a claimant could return to their former position of employment, which was administratively affirmed and never judicially challenged, became the commission's final pronouncement on the claimant's extent of disability thereby precluding a future award of PTD compensation. The court found that it did not and commented on the applicability of res judicata as follows:
Res judicata has limited application to workers' compensation matters, especially those involved in extent of disability:
"`It is almost too obvious for comment that res judicata does not apply if the issue is claimant's physical condition or degree of disability at two entirely different times * * *. A moment's reflection would reveal that otherwise there would be no such thing as reopening for change in condition. The same would be true of any situation in which the facts are altered by a change in the time frame * * *.'" State ex rel. B.O.C. Group, GMC v.Indus. Comm. (1991), 58 Ohio St.3d 199, 201 * * *, quoting 3 Larson, Workers' Compensation Law (1989), Section 79.72(f).
Id. at 389. (Emphasis sic.)
 {¶ 26} A review of both R.C. 4123.58 and Ohio Adm. Code4121-3-34 reveals that there is no requirement that a claimant filing a second application for PTD compensation is required to prove new and changed circumstances. Instead, Ohio Adm. Code4121-3-34 merely provides, in pertinent part, as follows:
(C) Processing of applications for permanent total disability
The following procedures shall apply to applications for permanent total disability that are filed on or after the effective date of this rule.
Each application for permanent total disability shall be accompanied by medical evidence from a physician, or a psychologist or a psychiatric specialist in a claim that has been allowed for a psychiatric or psychological condition, that supports an application for permanent and total disability compensation. The medical examination upon which the report is based must be performed within fifteen months prior to the date of filing of the application for permanent and total disability compensation. The medical evidence used to support an application for permanent total disability compensation is to provide an opinion that addresses the claimant's inability to work (for example, the claimant will never be able to return to his former position of employment, or will never return to work) resulting from the allowed conditions in the claim(s). A vocational expert's opinion, by itself, is insufficient to support an application for permanent total disability compensation. If the application for permanent total disability is filed without the required medical evidence, it shall be dismissed without hearing.
 {¶ 27} Furthermore, the issue raised here has already been decided in State ex rel. Youghiogheny Ohio Coal Co. v. Indus.Comm. (1992), 65 Ohio St.3d 351, 352-353, where the employer had argued that the commission lacked jurisdiction to consider the claimant's second application for PTD compensation. The court noted as follows:
Relator initially argues that a denial of permanent total disability compensation should preclude the commission from later awarding such compensation absent an affirmative showing by the claimant of new and changed circumstances. We find, however, that relator's reliance on State ex rel. Firestone Tire Rubber Co.v. Indus. Comm. (1990), 49 Ohio St.3d 283 * * *; State ex rel.Koonce v. Indus. Comm. (1985), 18 Ohio St.3d 60 * * *; State exrel. Manes v. Indus. Comm. (1990), 52 Ohio St.3d 260 * * *; andState ex rel. Casper v. McGraw Edison Serv. (1989),47 Ohio St.3d 113 * * *; however, is misplaced. Casper and Manes were confined to permanent partial and temporary total disability respectively. Firestone and Koonce involved permanent total disability, but said nothing about new and changed circumstances being a prerequisite to commission consideration of a subsequent application for permanent total disability compensation after an initial denial. * * *
 {¶ 28} As such, there is no requirement that a claimant demonstrate new and changed circumstances in filing subsequent motions for PTD compensation and relator's first argument lacks merit.
 {¶ 29} Relator next contends that the commission abused its discretion by relying upon the reports of Drs. Bressi and Scheatzle because they failed to acknowledge the effects of claimant's nonallowed conditions on his ability to perform sustained remunerative employment. This magistrate disagrees.
 {¶ 30} A review of the reports of Drs. Bressi and Scheatzle indicates that those doctors contained their opinions solely to the claimant's allowed conditions. As such, based solely upon the allowed conditions, both Dr. Bressi and Dr. Scheatzle concluded that claimant was precluded from performing any sustained remunerative employment. In State ex rel. Consolidation Coal Co.v. Indus. Comm. (1997), 78 Ohio St.3d 176, the employer had argued that because Dr. Fierra's report did not expressly state that his impairment rating excluded the claimant's polio, a nonallowed and preexisting condition, then its inclusion in the doctor's impairment rating must be assumed. The Ohio Supreme Court rejected this argument and noted that there is no requirement that a physician specifically indicate that a nonallowed condition was not part of the doctor's conclusion. Id. at 178. Furthermore, it is undisputed that nonallowed conditions are immaterial, regardless of their severity, provided that the allowed conditions, in and of themselves, prevent sustained remunerative employment. See State ex rel. Waddle v. Indus.Comm. (1993), 67 Ohio St.3d 452.
 {¶ 31} In the present case, relator is incorrect to assert that Drs. Bressi and Scheatzle were required to discuss claimant's nonallowed conditions. Instead, those doctors were required to give their opinion regarding the effect of the claimant's allowed conditions upon his ability or inability to perform sustained remunerative employment. The doctors did so; their reports are not defective, and the commission did not abuse its discretion in relying upon them. As such, relator's second argument lacks merit as well.
 {¶ 32} In its third argument, relator argues that claimant's allowed medical conditions alone do not render him permanently and totally disabled. This magistrate disagrees. The reports of Drs. Bressi and Scheatzle constitute some evidence upon which the commission could properly rely in determining that claimant was incapable of performing some sustained remunerative employment based solely upon his allowed conditions. Having found that claimant was precluded from performing some sustained remunerative employment based solely upon the allowed medical conditions, there was no requirement that the commission consider the nonmedical factors. See, for example, State ex rel. GalionMfg. Div. Dresser Industries, Inc. v. Haygood (1991),60 Ohio St.3d 38. While PTD benefits may never be denied solely on the basis of medical evidence without considering the Stephenson,
supra, factors contained in the record, there are some situations where the award of such benefits may properly be based on medical factors alone. In those instances, there is no practical purpose to consider nonmedical factors where medical factors alone preclude sustained remunerative employment. As such, relator's third argument likewise lacks merit.
 {¶ 33} Based on the foregoing, it is this magistrate's decision that relator has failed to demonstrate that the commission abused its discretion in granting PTD compensation to claimant and relator's request for a writ of mandamus should be denied.
 /s/ Stephanie Bisca Brooks
STEPHANIE BISCA BROOKS MAGISTRATE