[Cite as *State ex rel. Parrish v. Walter Randolph & Carl Fritschi*, 2024-Ohio-1135.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Jeffrey A. Parrish, | : | |
| Relator, | : | No. 22AP-134 |
| v. | : | (REGULAR CALENDAR) |
| Walter Randolph & Carl Fritschi et al., | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on March 26, 2024

**On brief:** *Clements, Taylor, Butkovich & Cohen, LPA, Co.,* and *Joseph A. Butkovich*, for relator.

**On brief:** *Dave Yost*, Attorney General, and *Anna Isupova*, for respondent Industrial Commission.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

LUPER SCHUSTER, J.

{¶ 1} Relator, Jeffrey A. Parrish, initiated this original action requesting this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission") to grant Parrish's application for permanent total disability ("PTD") compensation.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this court referred the matter to a magistrate. The magistrate issued the appended decision, including findings of fact and conclusions of law. The magistrate determined Parrish did not satisfy his burden under R.C. 4123.58(G) of presenting evidence of new and changed circumstances to enable the commission to consider the

application for PTD. Thus, the magistrate recommends this court deny Parrish's request for a writ of mandamus.

{¶ 3} Parrish filed objections to the magistrate's decision. Therefore, we must independently review the decision to ascertain whether the "magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d). Parrish does not challenge the magistrate's recitation of the pertinent facts; however, Parrish objects to the magistrate's conclusion that Parrish does not establish a clear legal right to the relief requested. More specifically, Parrish objects to the magistrate's determinations that: (1) R.C. 4123.58(G) is not unconstitutionally retroactive, (2) Parrish failed to present evidence of new and changed circumstances under R.C. 4123.58(G), and (3) Parrish's reliance on *State ex rel. Gay v. Mihm*, 68 Ohio St.3d 315 (1994), and *State ex rel. Stephenson v. Indus. Comm. of Ohio*, 31 Ohio St.3d 167 (1987), is misplaced.

{¶ 4} A brief summary of the factual circumstances is pertinent to our discussion. As set forth more fully in the magistrate's decision, Parrish sustained a work-related injury in October 1989, and he had three surgical procedures to treat his allowed conditions in October 1989, March 1991, and July 2001. Parrish last received temporary total disability ("TTD") compensation in 2002. Parrish first applied for PTD compensation in August 2003, and the commission denied his application, finding Parrish was capable of performing sedentary employment. Parrish filed a second application for PTD compensation on November 3, 2006, and the commission again denied the application, finding Parrish was capable of performing sedentary work with restrictions. In its denial of the second PTD application, the commission specifically noted Parrish did not present any change in vocational factors between the two PTD applications.

{¶ 5} Most recently, Parrish filed his third application for PTD compensation on March 24, 2021. In an order mailed November 9, 2021, the staff hearing officer ("SHO") found Parrish had not submitted evidence of new and changed circumstances to warrant adjudication of another PTD application and, accordingly, denied Parrish's application. Parrish filed a motion requesting reconsideration of that decision, and the commission denied his request. This instant mandamus action followed.

{¶ 6} To be entitled to a writ of mandamus, Parrish must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief.

*State ex rel. Pressley v. Indus. Comm. of Ohio*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm. of Ohio*, 26 Ohio St.3d 76, 78-79 (1986). But when the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56, 58 (1987).

**{¶ 7}** In his first objection, Parrish argues the magistrate erred in finding R.C. 4123.58(G) is not unconstitutionally retroactive. As the magistrate more fully explained, a court considering whether a statute is unconstitutionally retroactive applies a two-part test "asking (1) whether the General Assembly expressly made the statute retroactive and, if so, (2) whether the statute is substantive or remedial." *State v. Hubbard*, 167 Ohio St.3d 77, 2021-Ohio-3710, ¶ 14, citing *State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, ¶ 8. " 'It is well established that a statute is substantive if it impairs or takes away vested rights, affects an accrued substantive right, imposes new or additional burdens, duties, obligations, or liabilities as to a past transaction, or creates a new right.' " *Williams* at ¶ 9, quoting *Pratte v. Stewart*, 125 Ohio St.3d 473, 2010-Ohio-1860, ¶ 37. " 'Remedial laws, however, are those affecting only the remedy provided, and include laws that merely substitute a new or more appropriate remedy for the enforcement of an existing right.' " *Id.*, quoting *Pratte* at ¶ 37. Here, Parrish does not object to the magistrate's determination that the General Assembly expressly made R.C. 4123.58(G) retroactive. Through his objection, Parrish disagrees with the magistrate's determination that R.C. 4123.58(G) is remedial rather than substantive and, thus, applies to all pending claims before the commission.

**{¶ 8}** Amended effective September 28, 2021, R.C. 4123.58(G) provides:

> If the industrial commission has adjudicated a claimant's application for compensation payable under this section for permanent total disability and issued a final order denying compensation for that application, the claimant shall present evidence of new and changed circumstances before the industrial commission may consider a subsequent application filed by the claimant for compensation under this section for

the same injury or occupational disease identified in the previous application.

Parrish asserts the requirement in R.C. 4123.58(G) that an applicant demonstrate new and changed circumstances, and imposes a new burden on applicants, like Parrish, whose claims were pending before the effective date of R.C. 4123.58(G) and therefore must be considered a substantive change.

{¶ 9} We agree with the magistrate's conclusion that R.C. 4123.58(G) is remedial, not substantive, and therefore is not unconstitutionally retroactive for claims pending on the effective date of the statute. Importantly, we agree with the magistrate's analysis that the requirement in R.C. 4123.58(G) that an applicant demonstrate new and changed circumstances on subsequent PTD applications is a procedural component requiring only that the claimant make an initial showing sufficient for the commission to consider the subsequent PTD application. The statute does not foreclose a claimant's ability to make a subsequent application for PTD, impact the analysis of the merits of the PTD application, or change the burden, nature, or quantum of proof a claimant must demonstrate to be entitled to PTD compensation. Thus, contrary to Parrish's argument, the new and changed circumstances threshold in R.C. 4123.58(G) does not take away or impair a claimant's substantive right to PTD compensation. Instead, as the magistrate explained, the requirement in R.C. 4123.58(G) that a claimant demonstrate new or changed circumstances creates a procedural mechanism for the commission's adjudication of subsequent PTD applications filed after the commission's denial of an initial application for PTD. Because the magistrate correctly determined that R.C. 4123.58(G) is remedial, not substantive, the magistrate did not err in finding the statute is not unconstitutionally retroactive. Thus, we overrule Parrish's first objection to the magistrate's decision.

{¶ 10} Through his second objection to the magistrate's decision, Parrish argues that even if R.C. 4123.58(G) can be retroactively applied to his third PTD application, the magistrate nonetheless erred in finding he failed to present evidence of new and changed circumstances. Parrish argues the commission failed to address the medical evidence from Dr. J.L. Mattson Murdock before concluding that Parrish failed to establish new and changed circumstances in order for the commission to hear his new application for PTD. We disagree.

{¶ 11} In the SHO's order finding Parrish failed to present evidence of new and changed circumstances, the SHO specifically found "the medical documentation in the [commission's] claim contemporaneous to the Injured Worker's limited work in 2019 and 2020 does not corroborate the Injured Worker's allegations of excessive pain when doing these temporary positions of employment." (Nov. 4, 2021 SHO Order at 3.) Further, the SHO expressly mentioned the medical documentation from Dr. Murdock, noting the doctor's note from November 9, 2020 stated Parrish "is not having a flare-up at this time." (SHO Order at 3.) From this evidence, the SHO concluded the medical documentation from this time period did not indicate Parrish was having an exacerbation of his medical conditions due to his work or undergoing any significant medical treatments, and instead found Parrish's limited medical treatment during this time to be "essentially maintenance only." (SHO Order at 3.) Though Parrish disagrees with the weight the commission afforded this evidence, it is not the role of this court to reweigh the evidence before the commission. *State ex rel. Casey v. Indus. Comm. of Ohio*, 10th Dist. No. 20AP-247, 2022-Ohio-532, ¶ 21 (this court cannot second-guess the commission's determinations of witness credibility or the proper weight to accord particular evidence), citing *State ex rel. Welsh Ents., Inc. v. Indus. Comm. of Ohio*, 10th Dist. No. 19AP-127, 2020-Ohio-2801, ¶ 26. Having reviewed the record, we find the commission did not abuse its discretion in determining Parrish failed to present evidence of new and changed circumstances to permit the commission to hear the merits of his third PTD application. Therefore, we overrule Parrish's second objection to the magistrate's decision.

{¶ 12} Lastly, under his third objection to the magistrate's decision, Parrish argues the commission erred when it failed to determine he was entitled to relief under *Gay* and *Stephenson*. Parrish's argument under his third objection goes to the merits of his PTD application. However, having already determined in our resolution of Parrish's second objection to the magistrate's decision that the magistrate did not err in finding the commission did not abuse its discretion in concluding Parrish failed to present sufficient evidence of new and changed circumstances, R.C. 4123.58(G) precludes consideration of the merits of Parrish's third application for PTD compensation. Thus, the magistrate did not err in determining this court could not reach the merits of Parrish's third PTD

application. We, therefore, overrule Parrish's third and final objection to the magistrate's decision.

{¶ 13} Following our independent review of the record pursuant to Civ.R. 53, we find the magistrate did not err in determining Parrish is not entitled to a writ of mandamus. Accordingly, we adopt the magistrate's findings of fact and conclusions of law, we overrule Parrish's objections to the magistrate's decision, and we deny Parrish's request for a writ of mandamus.

*Objections overruled*;
*writ of mandamus denied.*

DORRIAN and JAMISON, JJ., concur.

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Jeffrey A. Parrish, | : | |
| Relator, | : | |
| v. | : | No. 22AP-134 |
| Walter Randolph & Carl Fritschi et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

---

M A G I S T R A T E ' S   D E C I S I O N

Rendered on August 18, 2023

---

*Clements, Taylor, Butkovich & Cohen, LPA, Co.*, and *Joseph A. Butkovich*, for relator.

*Dave Yost*, Attorney General, and *Anna Isupova*, for respondent Industrial Commission.

---

IN MANDAMUS

{¶ 14} Relator, Jeffrey A. Parrish, seeks a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to grant relator's application for permanent total disability ("PTD") compensation.

**I. Findings of Fact**

{¶ 15} 1. On October 13, 1989, relator sustained an injury arising out of his employment with respondent Walter Randolph & Carl Fritschi ("employer"). While relator was doing demolition work on a bridge, the bridge collapsed, causing relator to sustain serious injuries.

{¶ 16} 2. Relator's workers' compensation claim was allowed for the following conditions: "fracture left leg; below knee amputation left leg; injury to elbow; fractured spine; laceration head; osteoarthritis of the right wrist; fibular overgrowth of left below the knee amputation; major depressive disorder; carpal tunnel syndrome right; lesion right median nerve; lesion right ulnar nerve." (R. at 157.)

{¶ 17} 3. Relator had three surgical procedures to treat his allowed conditions, undergoing surgery on October 13, 1989, March 19, 1991, and July 31, 2001. Relator last received temporary total disability ("TTD") compensation in 2002.

## A. First Application for PTD Compensation

{¶ 18} 4. On August 19, 2003, relator filed an IC-2 application for compensation for PTD. Relator's application was supported by the report of Jeffrey L. Stambough, M.D., dated August 4, 2003, in which Dr. Stambough found relator had a high probability of being totally and permanently disabled.

{¶ 19} 5. In an October 28, 2003 report, a vocational expert, William T. Cody, MS, found relator to be permanently and totally occupationally disabled.

{¶ 20} 6. At the request of the commission, relator was examined by Ron M. Koppenhoefer, M.D., on October 31, 2003. In a report issued the same day, Dr. Koppenhoefer found relator had a 39 percent whole body impairment. Dr. Koppenhoefer concluded that relator was capable of sedentary work with limitations regarding repetitive movement of the right wrist and repetitive gripping and grasping activities.

{¶ 21} 7. Donald J. Tosi, Ph.D., conducted a psychological evaluation of relator at the request of the commission on October 31, 2003. In a report dated November 5, 2003, Dr. Tosi found relator had reached maximum medical improvement ("MMI"), had a 20 percent whole person impairment, and would be able to return to the former position of employment based solely on the allowed psychological claim.

{¶ 22} 8. On March 18, 2004, a commission staff hearing officer ("SHO") heard the issue of relator's August 19, 2003 IC-2 application for PTD compensation. In an order mailed March 20, 2004, the SHO denied the IC-2 application. The SHO, relying on the opinion of Dr. Koppenhoefer, found relator was capable of performing sedentary employment with the limitations set forth by Dr. Koppenhoefer. The SHO also found

relator's allowed psychological condition did not prevent him from performing any employment he was otherwise qualified to perform. The SHO noted that relator's age was an asset that would enable him to adapt to a new work environment, but his education was a limitation that would prevent him from performing occupations involving clerical duties.

**B. Second Application for PTD Compensation**

{¶ 23} 9. David P. Schwartz, Ph.D., stated in a report dated October 5, 2006 that he was treating relator for depressive psychosis resulting from the industrial injury. Dr. Schwartz opined that the combination of relator's multiple severe difficulties combined to produce permanent and total disability from all sustained remunerative employment.

{¶ 24} 10. In an October 19, 2006 report, Philip M. Goldman, M.D., stated that relator was permanently and totally disabled from being gainfully employed.

{¶ 25} 11. Relator filed a second IC-2 application for PTD compensation on November 3, 2006.

{¶ 26} 12. Following a psychological examination performed on March 23, 2007 at the request of the commission, Michael T. Farrell, Ph.D. found relator had a 20 percent whole body impairment due to the allowed psychological condition. Dr. Farrell found relator's allowed psychological condition did not prevent him from resuming previous employment activities.

{¶ 27} 13. Based on a March 23, 2007 evaluation at the request of the commission, Andrew Freeman, M.D., found relator had a 47 percent whole person impairment and was capable of sedentary work with a restriction on use of left foot controls and repetitive use of right hand.

{¶ 28} 14. Vocational expert Cody again found in a June 20, 2007 report that relator was permanently and totally occupationally disabled.

{¶ 29} 15. On June 20, 2008, a commission SHO heard the issue of relator's November 3, 2006 IC-2 application for PTD compensation. In an order mailed June 28, 2008, the SHO denied the IC-2 application. The SHO found that relator was unable to return to his former position of employment as a result of the allowed conditions in the claim based on the reports of Drs. Goldman, Schwartz, Farrell, and Freeman. Based on the reports of Drs. Farrell and Freeman, however, the SHO found relator was capable of

performing sedentary work within the restrictions identified by those doctors. Regarding

changes since the prior application for PTD compensation, the SHO stated the following:

> The [SHO] spent considerable time at today's hearing inquiring of the injured worker concerning what changes have taken place in his care and situation since the denial of his application on 03/18/2004. A review of the file finds no amendments to the claim nor further surgeries. The last surgery undertaken in the claim was on 07/31/2001. The injured worker last worked on 04/26/2001. The injured worker confirmed by his testimony that his course of medical care over the last five years has been the same consisting of chiropractic manipulation, medications, acupuncture, massage and physical therapy. The injured worker's testimony in this regard is consistent with the medical reports on file from his treating physicians. After having reviewed the injured worker's testimony and this medical record, the [SHO] is persuaded that there has been essentially no change to the injured worker's care since the denial of his first application for permanent and total disability compensation benefits. The [SHO] finds that said care has been of a maintenance nature only.

> The [SHO] finds and concludes that the only change with respect to the injured worker's medical status as related to the allowed conditions in the claim is that he has aged since the denial of his last application for permanent total disability compensation benefits.

> This finding by the [SHO] is further supported by a review of the two vocational reports submitted to his claim file by the injured worker from William T. Cody. The injured worker has submitted reports [from] Mr. Cody, dated 10/23/2003 and 05/18/2007. The initial report was filed in support of the denied application for permanent and total disability compensation benefits. The 05/18/2007 report was filed in support of the present application. A comparative review of both Mr. Cody's reports finds them to be essentially the same both in history and in their conclusions. The test results secured by Mr. Cody are almost exactly the same. The interview results noted by Mr. Cody in both reports are essentially identical. The Vocational Potential analysis of Mr. Cody in both reports is also essentially identical. The only real changes from report to report are his references to the different Industrial Commission examining physicians. The [SHO] finds that Mr. Cody has not presented any change in the vocational factors as between the two reports and since the

initial denial of permanent total disability compensation benefits.

(R. at 67.) The SHO further found relator's age of 54 was not a barrier to his return to employment and his education including his "documented ability to read, write and perform basic math" were also an asset that would permit additional training or educational activity. (R. at 67.) Therefore, the SHO concluded relator was not permanently and totally disabled from all forms of sustained remunerative employment as a result of the allowed conditions.

## C. Third Application for PTD Compensation

{¶ 30} 16. Chris H. Modrall, Ph.D., conducted a psychological evaluation of relator on October 22, 2010 finding that relator continued to have a 20 percent permanent partial impairment due to the allowed psychological condition.

{¶ 31} 17. Marc W. Whitsett, M.D., found following an October 22, 2010 examination that relator had a 4 percent whole person impairment as a result of the allowed conditions of right carpal tunnel syndrome, lesion right median nerve, and right ulnar nerve. Considering the prior award of 22 percent permanent partial impairment, Dr. Whitsett found relator had a 25 percent whole person impairment.

{¶ 32} 18. Based on the October 22, 2010 reports of Drs. Modrall and Whitsett, Dr. Freeman found relator had a combined 40 percent permanent partial impairment in a November 19, 2010 MEDCO-21 physician file review.

{¶ 33} 19. Following a January 12, 2021 examination, JL Mattson Murdock, D.C., provided a treatment plan for relator including acupuncture once per week for six weeks directed to phantom limb pain and physical therapy twice per week for six weeks. Dr. Murdock noted in the examination report that relator was complaining of phantom limb pain and increased right wrist pain. With regard to the right wrist, Dr. Murdock noted weakness, decreased wrist motion, and wrist pain with movement.

{¶ 34} 20. Relator filed a third IC-2 application for PTD compensation on March 24, 2021 supported by the February 26, 2021 report of Dr. Murdock, in which Dr. Murdock found relator was permanently and totally disabled and unable to engage in any remunerative employment. Dr. Murdock noted relator's extensive treatments and procedures, and stated that relator required ongoing therapy and specialist consultations.

Dr. Murdock found relator continued to experience severe pain and disability associated with the allowed injuries. Dr. Murdock noted relator's complaints of continued upper back pain and phantom limb pain. With regard to relator's right wrist, Dr. Murdock found relator complained of ongoing pain and exhibited decreased range of motion and grip strength.

{¶ 35} 21. Relator was next examined by Gary L. Ray, M.D., on June 30, 2021. In a report the same day, Dr. Ray found relator had reached maximum medical improvement, noting relator had undergone extensive treatment including medications, physical and occupational therapy, injections, chiropractic treatment, acupuncture, and multiple surgical procedures. Dr. Ray found relator had a 51 percent combined whole person impairment based on the following: (1) a 12 percent whole person impairment related to the allowed condition of fracture right wrist and osteoarthritis of the right wrist; (2) a 12 percent whole person impairment because of a decrease in range of motion at the right wrist; (3) a 1 percent whole person impairment due to a decrease in range of motion at the right elbow; (4) a 28 percent whole person impairment related to the allowed conditions of below the knee amputation left leg and fibular overgrowth of the left knee below the knee amputation; (5) a 6 percent whole person impairment related to the allowed condition of fractured spine; (6) a 1 percent whole person impairment related to the allowed condition of laceration of head; (7) an 8 percent whole person impairment related to the allowed conditions of carpal tunnel syndrome right and lesion right median nerve; and (8) an 8 percent whole person impairment related to the allowed condition of lesion right ulnar nerve. With regard to relator's residual functional capacity, Dr. Ray opined that relator was capable of sedentary work with further limitations of no repetitive use of the right hand.

{¶ 36} 22. Stephen W. Halmi, Psy.D., conducted an independent psychological examination of relator on July 1, 2021. Dr. Halmi found relator had reached MMI with regard to the allowed psychological condition. Dr. Halmi noted relator was diagnosed with major depressive disorder in 2001, but according to relator, his depression began after his injury in the industrial accident. Relator had participated in individual psychological therapy and had been prescribed psychiatric medication in the past. Relator continued to experience symptoms of depression due to his inability to do things resulting from his

amputation and chronic pain. Dr. Halmi opined there was no evidence relator's depression had improved despite mental health treatment, stating that relator "reported experiencing the same depressive symptoms that he reported to [other doctors] years ago." (R. at 143.) Dr. Halmi found relator had a 21 percent whole person impairment due to the allowed psychological condition. With regard to relator's residual mental and behavior capacity resulting from the impairment associated with the allowed condition, Dr. Halmi opined relator was capable of work with some limitations, stating:

> It is my opinion that [relator] could not work in an environment that required quick pace and high volume production. I opine that he would have to work at a job that he already knew how to perform. He would have difficulty learning new tasks. If it was a task that he did not know how to perform, the task would have to be simple and repetitive. Given his concentration problems, it is also my opinion that he would be unable to work with dangerous equipment (i.e., saws, other power tools, etc.).

(R. at 144-45.) In the occupational activity assessment based on mental and behavioral examination form, Dr. Halmi noted the following limitations: (1) low stress job, (2) simple one and two step job, (3) not working with dangerous tools, (4) low volume workload, and (5) slow pace environment.

{¶ 37} 23. Relator was next examined by Kenneth J. Manges, Ph.D., on September 13, 2021. In a report dated September 17, 2021, Dr. Manges noted relator's statement that he had gone to psychological therapy for about five years after the industrial injury, but then treatment stopped. Dr. Manges found relator had a 27 percent whole person impairment.

{¶ 38} 24. On November 3, 2021, a commission SHO heard the issue of relator's March 24, 2021 IC-2 application for PTD compensation. In an order mailed November 9, 2021, the SHO, applying R.C. 4123.58(G), found relator had not submitted sufficient evidence of new and changed circumstances to warrant adjudicating another IC-2 application for the claim. The SHO made the following findings regarding the existence of new and changed circumstances: (1) no amendments or additional medical conditions had been allowed in the claim since the last IC-2 was adjudicated; (2) relator had not undergone any surgeries or substantial medical procedures since the last IC-2 was

adjudicated; (3) relator had not requested any TTD compensation since 2002, leading the SHO to find that relator's medical conditions were "essentially stable." (R. at 158.)

{¶ 39} The SHO examined relator's arguments in support of the PTD application, noting the argument raised by relator's representative that new and changed circumstances existed because relator had attempted to return to work for a few days in 2019 and 2020. The SHO found relator's "limited attempt to return to work for a few days over the course of two years is, in and of itself, not significant enough to be considered a new and changed circumstance in this claim." (R. at 159.) Additionally, the SHO found the medical documentation in the claim contemporaneous to relator's attempt to return to work in 2019 and 2020 did not corroborate the allegations of excessive pain when performing the temporary positions of employment. The SHO specifically noted that the sole medical treatment in 2020 was an office visit with Dr. Murdock, who stated in his office note that relator was not having a flare-up at the time of the visit. The SHO made the following findings regarding relator's medical treatment:

> The [SHO] finds the medical documentation during the time period when [relator] was performing the limited work did not indicate [relator] was having an exacerbation of his medical conditions due to work or undergoing any significant medical treatments. Rather, the [SHO] finds [relator's] limited medical treatment during this time appears to be essentially maintenance only.

(R. at 159.) Therefore, the SHO denied relator's IC-2 PTD application, concluding that relator had not submitted sufficient evidence of new and changed circumstances as required, pursuant to R.C. 4123.58(G), to warrant adjudicating another PTD application at that time.

{¶ 40} 25. Relator filed a C-86 motion requesting reconsideration of the November 9, 2021 SHO decision. The commission denied relator's request in an order mailed December 8, 2021 on the basis that relator's request for reconsideration failed to meet the criteria of Industrial Commission Resolution R18-1-06.

{¶ 41} 26. On February 25, 2022, relator filed the instant action in mandamus.

## II. Discussion and Conclusions of Law

{¶ 42} Relator seeks a writ of mandamus ordering the commission to award relator PTD compensation. Two questions are presented in this mandamus action: (1) whether R.C. 4123.58(G) is unconstitutionally retroactive; and (2) if R.C. 4123.58(G) is not unconstitutionally retroactive, whether the SHO erred in concluding relator failed to meet his burden under the statute of presenting evidence of new and changed circumstances to enable the commission to consider the application.

### A. Requirements for Mandamus

{¶ 43} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, a relator must establish a clear legal right to the requested relief, that the commission has a clear legal duty to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Belle Tire Distribs. v. Indus. Comm.*, 154 Ohio St.3d 488, 2018-Ohio-2122; *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). With regard to factual determinations, where the commission's determination is supported by some evidence, it has not abused its discretion and this court must uphold the decision. *State ex rel. Seibert v. Richard Cyr, Inc.*, 157 Ohio St.3d 266, 2019-Ohio-3341, ¶ 44, citing *State ex rel. Pass v. C.S.T. Extraction Co.*, 74 Ohio St.3d 373, 376 (1996). Questions of law are reviewed de novo. *State ex rel. Autozone Stores, Inc. v. Indus. Comm.*, 10th Dist. No. 21AP-294, 2023-Ohio-633, ¶ 16. *See State v. Leyh*, 166 Ohio St.3d 365, 2022-Ohio-292, ¶ 14; *Hanna v. Groom*, 10th Dist. No. 07AP-502, 2008-Ohio-765, ¶ 10.

### B. Permanent Total Disability under Workers' Compensation System

{¶ 44} "[T]he purpose of permanent and total disability benefits is to compensate injured persons for impairment of earning capacity." *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167, 170 (1987), citing *State ex rel. Gen. Motors Corp. v. Indus. Comm.*, 42 Ohio St.2d 278 (1975). "Permanent total disability is the inability to do any sustained remunerative work." *State ex rel. Schultz v. Indus. Comm.*, 96 Ohio St.3d 27, 2002-Ohio-3316, ¶ 61, citing *Stephenson* at 170. *See* Ohio Adm.Code 4121-3-34(B)(1).

{¶ 45} R.C. 4123.58 governs compensation for PTD, allowing compensation only when one of the following conditions is met:

(1) The claimant has lost, or lost the use of both hands or both arms, or both feet or both legs, or both eyes, or of any two thereof; however, the loss or loss of use of one limb does not constitute the loss or loss of use of two body parts;

(2) The impairment resulting from the employee's injury or occupational disease prevents the employee from engaging in sustained remunerative employment utilizing the employment skills that the employee has or may reasonably be expected to develop.

R.C. 4123.58(C). PTD compensation is prohibited when the reason the applicant is unable to engage in sustained remunerative employment is due to any of the following reasons, whether individually or in combination:

(1) Impairments of the employee that are not the result of an allowed injury or occupational disease;

(2) Solely the employee's age or aging;

(3) The employee retired or otherwise is not working for reasons unrelated to the allowed injury or occupational disease.

(4) The employee has not engaged in educational or rehabilitative efforts to enhance the employee's employability, unless such efforts are determined to be in vain.

R.C. 4123.58(D).

{¶ 46} R.C. 4123.58 was amended by 2021 Am.Sub.H.B. No. 75 ("H.B. 75"), which in part added R.C. 4123.58(G).[1] Effective September 28, 2021, the statute provides:

---

[1] Following the amendments to R.C. 4123.58 enacted in H.B. 75, R.C. 4123.58 was amended by the 134th General Assembly a second time in Am.Sub.H.B. No. 281 ("H.B. 281"). H.B. 281, which became effective April 6, 2023, made a minor change to R.C. 4123.58(F) by striking through and thereby deleting the word "handicapped," which immediately preceded "individuals," and inserting the word "with disabilities" after the aforementioned "individuals." However, the remaining text of R.C. 4123.58 in H.B. 281 did not include the text of R.C. 4123.58(G). H.B. 281 gave no specific indication that it intended to amend R.C. 4123.58 by removing R.C. 4123.58(G) through the usual means of striking through the existing text of R.C. 4123.58(G). *See* Ohio Adm.Code 103-5-01 ("Old matter that is to be omitted from an existing codified or uncodified section is indicated by retaining the matter as it appears in the section and striking it through with a horizontal line."). Section 2 of H.B. 281 provided in pertinent part: "That existing sections * * * 4123.58 * * * of the Revised Code are hereby repealed." *See State v. Wilson*, 77 Ohio St.3d 334, 337 (1997) (stating in considering the effect of a former version of R.C. 151.52 that "[m]atter to be affected by an 'existing sections' repeal must appear in the body of the enrolled Act and must be stricken through").

> If the industrial commission has adjudicated a claimant's application for compensation payable under this section for permanent total disability and issued a final order denying compensation for that application, the claimant shall present evidence of new and changed circumstances before the industrial commission may consider a subsequent application filed by the claimant for compensation under this section for the same injury or occupational disease identified in the previous application.

R.C. 4123.58(G).

{¶ 47} Ohio Adm.Code 4121-3-34 governs the processing and adjudication of applications for PTD. The applicant bears the burden to prove permanent total disability by establishing under a preponderance of the evidence that the disability is permanent and that the inability to work is causally related to the allowed conditions. Ohio Adm.Code 4121-3-34(D)(3)(a). *See State ex rel. Sheppard v. Indus. Comm.*, 139 Ohio St.3d 223, 2014-Ohio-1904, ¶ 16; *State ex rel. LTV Steel Co. v. Indus. Comm.*, 65 Ohio St.3d 22, 23 (1992). The application must "identify, if already on file, or be accompanied by medical evidence from a physician, or a psychologist or a psychiatric specialist in a claim that has been

---

The Legislative Service Commission includes the text of R.C. 4123.58(G) in its official online version of the Revised Code. The following note from the Legislative Service Commission appears after the text of R.C. 4123.58 on its website: "The Legislative Service Commission presents the text of this section as a composite of the section as amended by multiple acts of the General Assembly. This presentation recognizes the principle stated in R.C. 1.52(B) that amendments are to be harmonized if reasonably capable of simultaneous operation." Legislative Service Commission, *Section 4123.58*, https://codes.ohio.gov/ohio-revised-code/section-4123.58 (accessed August 8, 2023).

The provision in R.C. 1.52 noted by the Legislative Service Commission provides:

> If amendments to the same statute are enacted at the same or different sessions of the legislature, one amendment without reference to another, the amendments are to be harmonized, if possible, so that effect may be given to each. If the amendments are substantively irreconcilable, the latest in date of enactment prevails. The fact that a later amendment restates language deleted by an earlier amendment, or fails to include language inserted by an earlier amendment, does not of itself make the amendments irreconcilable. Amendments are irreconcilable only when changes made by each cannot reasonably be put into simultaneous operation.

R.C. 1.52(B). *See State v. McCullough*, 9th Dist. No. 28917, 2018-Ohio-4499, ¶ 11-12; *Wilson* at 337.

The magistrate infers the absence of R.C. 4123.58(G) from the text of H.B. 281 may have occurred because H.B. 281 was initially passed by the House on June 16, 2021, which was before the effective date of H.B. 75. Regardless, in the instant matter, no party contends that R.C. 4123.58(G) was not in effect at the time of the SHO's order denying relator's third application for PTD in this matter. As a result, it is not necessary at this time to resolve the impact, if any, of H.B. 281 to R.C. 4123.58(G).

allowed for a psychiatric or psychological condition(s), that supports an application for compensation for permanent total disability." Ohio Adm.Code 4121-3-34(C)(1). *See State ex rel. Kent State Univ. v. Indus. Comm.*, 10th Dist. No. 15AP-416, 2016-Ohio-1032 (stating that under Ohio Adm.Code 4121-3-34(C)(1) an application can be dismissed if it is filed without the required medical evidence).

{¶ 48} The relevant inquiry in PTD cases is whether the applicant engages in or is medically capable of sustained remunerative employment. *Seibert* at ¶ 18, citing *State ex rel. Lawson v. Mondie Forge*, 104 Ohio St.3d 39, 2004-Ohio-6086, ¶ 16; *State ex rel. Franta v. Indus. Comm. of Ohio*, 10th Dist. No. 19AP-530, 2021-Ohio-1501, ¶ 6. The term "sustained" has not been precisely defined for workers' compensation purposes. In order to be considered sustained, remunerative activity does not have to occur on a regular or daily basis, but "any 'ongoing pattern' of activity can be categorized as sustained activity." *State ex rel. McNea v. Indus. Comm.*, 131 Ohio St.3d 408, 2012-Ohio-1296, ¶ 13, quoting *Schultz* at ¶ 63. The Supreme Court of Ohio has held that "part-time work constitutes sustained remunerative employment." *State ex rel. Toth v. Indus. Comm.*, 80 Ohio St.3d 360, 362 (1997). Importantly, however, there is no bright-line numerical analysis for determining whether part-time work meets the qualifications for sustained remunerative employment in PTD cases. *State ex rel. Bonnlander v. Hamon*, 150 Ohio St.3d 567, 2017-Ohio-4003, ¶ 20 (stating that "there is no hourly standard for determining one's capability to perform sustained remunerative employment on a part-time basis," but rather the "commission decides whether a claimant is capable of sustained remunerative employment on a case-by-case basis").

{¶ 49} "Entitlement to permanent total disability compensation requires a showing that the medical impairment due to the allowed conditions, either alone or together with nonmedical disability factors, prevents claimant from engaging in sustained remunerative employment." *State ex rel. Waddle v. Indus. Comm.*, 67 Ohio St.3d 452, 455 (1993), quoting *LTV Steel Co.,* at 24. Nonmedical factors include the "claimant's age, education, work record, and all other factors, such as physical, psychological, and sociological, that are contained within the record." *Stephenson* at 173. "[A] claimant's medical capacity to work is not dispositive if the claimant's age, experience, education, etc., foreclose the claimant's employability." *State ex rel. Gay v. Mihm*, 68 Ohio St.3d 315, 321 (1994). *See*

*State ex rel. Navistar, Inc. v. Indus. Comm.*, 160 Ohio St.3d 7, 2020-Ohio-712, ¶ 23, quoting *State ex rel. Galion Mfg. Div., Dresser Indus., Inc. v. Haygood*, 60 Ohio St.3d 38, 40 (1991) ("While the commission may not *deny* PTD compensation without considering nonmedical factors, it may *grant* PTD compensation without considering nonmedical factors when 'medical factors alone preclude sustained remunerative employment.' " (Emphasis sic.)). Furthermore, the commission is required to "specifically state what evidence has been relied upon, and briefly explain the reasoning for its decision." *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991), paragraph one of the syllabus.

## C. Whether R.C. 4123.58(G) Is Unconstitutionally Retroactive

{¶ 50} Relator argues that the commission abused its discretion by imposing evidentiary requirements not in place at the time relator's application for PTD compensation was filed. Relator contends that applying R.C. 4123.58(G) to PTD applications already pending at the time the statutory provisions became effective constitutes an impermissible retroactive application.

{¶ 51} Before turning to the merits of the question presented, it is necessary to consider the appropriate standard of review. Relator argues that the commission's application of R.C. 4123.58(G) constituted an abuse of discretion, and the commission also refers the abuse of discretion standard. However, the magistrate finds this issue to be a constitutional challenge involving statutory interpretation, which is therefore reviewed de novo. *Newburgh Hts. v. State*, 168 Ohio St.3d 513, 2022-Ohio-1642, ¶ 18, quoting *Put-In-Bay v. Mathys*, 163 Ohio St.3d 1, 2020-Ohio-4421, ¶ 11 (" 'We review constitutional challenges to state and local legislation de novo.' "); *TWISM Ents., L.L.C. v. State Bd. of Registration for Professional Engineers & Surveyors*, 172 Ohio St.3d 225, 2022-Ohio-4677, ¶ 42-43; *State ex rel. McDonald v. Indus. Comm.*, 10th Dist. No. 20AP-386, 2021-Ohio-4494, ¶ 12, citing *State ex rel. Natl. Lime & Stone Co. v. Marion Cty. Bd. of Commrs.*, 152 Ohio St.3d 393, 2017-Ohio-8348, ¶ 14 ("Statutory interpretation presents a question of law subject to a de novo standard of review."). When considering questions of statutory interpretation under Ohio law, " 'it is never mandatory for a court to defer to the judgment of an administrative agency' and a court should never do so to 'alter the meaning of clear text.' " *Autozone*, 2023-Ohio-633 at ¶ 16, quoting *TWISM* at ¶ 42.

{¶ 52} To begin, statutes enjoy a strong presumption of constitutionality. *State v. Cook*, 83 Ohio St.3d 404, 409 (1998), quoting *State ex rel. Dickman v. Defenbacher*, 164 Ohio St. 142, 147 (1955) ("A regularly enacted statute of Ohio is presumed to be constitutional and is therefore entitled to the benefit of every presumption in favor of its constitutionality."). Therefore, " ' "before any legislative power, as expressed in a statute, can be held invalid, it must appear that such power is clearly denied by some constitutional provision." ' " *Newburgh* at ¶ 19, quoting *Tobacco Use Prevention & Control Found. Bd. of Trustees v. Boyce*, 127 Ohio St.3d 511, 2010-Ohio-6207, ¶ 10, quoting *Williams v. Scudder*, 102 Ohio St. 305, 307 (1921).

{¶ 53} The Ohio Constitution prohibits the General Assembly from passing retroactive laws and protects vested rights from new legislative encroachments as follows:

> The general assembly shall have no power to pass retroactive laws, or laws impairing the obligation of contracts; but may, by general laws, authorize courts to carry into effect, upon such terms as shall be just and equitable, the manifest intention of parties, and officers, by curing omissions, defects, and errors, in instruments and proceedings, arising out of their want of conformity with the laws of this state.

Article II, Section 28, Ohio Constitution.[2] *See State v. Lasalle*, 96 Ohio St.3d 178, 2002-Ohio-4009, ¶ 13; *Coca-Cola Bottling Corp. v. Lindley*, 54 Ohio St.2d 1, 6 (1978), quoting *Lakengren, Inc. v. Kosydar*, 44 Ohio St.2d 199, 201 (1975) (stating that the constitutional "prohibition against retroactive laws 'is a bar against the state's imposing new duties and obligations upon a person's past conduct and transactions, and it is a protection for the individual who is assured that he may rely upon the law as it is written and not later be subject to new obligations thereby' "). "[T]he presumption against retroactive legislation is deeply rooted * * * and embodies a legal doctrine centuries older than our Republic." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994).

{¶ 54} Courts considering whether a statute is unconstitutionally retroactive must apply a two-part test articulated in *Van Fossen v. Babcock & Wilcox Co.*, 36 Ohio St.3d 100 (1988). *Lasalle* at ¶ 14. First, the reviewing court must determine whether the General

---

[2] The Supreme Court of Ohio has noted that the terms "retroactive" and "retrospective" have historically been used interchangeably. *State v. Consilio*, 114 Ohio St.3d 295, 2007-Ohio-4163, ¶ 1, fn. 1; *Bielat v. Bielat*, 87 Ohio St.3d 350, 353 (2000).

Assembly expressly made the statute retroactive. *See Van Fossen* at 106 (stating that "[t]he issue of whether a statute may constitutionally be applied retrospectively does not arise unless there has been a prior determination that the General Assembly has specified that the statute so apply"); *State v. Consilio*, 114 Ohio St.3d 295, 2007-Ohio-4163, ¶ 10. Pursuant to R.C. 1.48, "[a] statute is presumed to be prospective in its operation unless expressly made retrospective." Thus, where a statute contains "no clear indication of retroactive application, then the statute may only apply to cases which arise subsequent to its enactment." *Kiser v. Coleman*, 28 Ohio St.3d 259, 262 (1986). *See Consilio* at ¶ 15 ("Retroactivity is not to be inferred.").

**{¶ 55}** Under the terms of H.B. 75, R.C. 4123.58(G) "appl[ies] to claims pending on or arising on or after the effective date of this section," which was September 28, 2021. 2021 Am.Sub.H.B. No. 75, Section 8. Based on this express indication, it is clear the General Assembly made the statute in question retroactive. *See State ex rel. Kilbane v. Indus. Comm.*, 91 Ohio St.3d 258, 259 (2001) (finding the "express legislative intent for retroactivity is obvious here because uncodified law makes the [amendment] applicable to all 'pending' claims for compensation, with certain exceptions," thereby "chang[ing]. the way the commission reviews applications to settle claims and applies to causes of action * * * that arose prior to the effective date of the statute"); *Ackison v. Anchor Packing Co.*, 120 Ohio St.3d 228, 2008-Ohio-5243, ¶ 13 (finding statute expressly made retroactive where General Assembly directed that amended statutory provisions applied to cases pending on and thus filed before the effective date of the amendments); *Thorton v. Montville Plastics & Rubber, Inc.*, 121 Ohio St.3d 124, 2009-Ohio-360, ¶ 19 (finding amendment to R.C. 4123.512(H) that was applicable to claims pending on the effective date of the amendment applied retroactively); *Van Fossen* at 106. As relator's PTD application was filed before and remained pending when R.C. 4123.58(G) became effective, the statute applied retroactively to relator's claim. However, this does not end the analysis, but instead requires consideration of the second part of the retroactivity test— whether the statute is unconstitutionally retroactive.

**{¶ 56}** Under this second part of the analysis, a court will find that "[a] statutory enactment is repugnant to Section 28, Article II if it is expressly retroactive and is substantive, as opposed to merely remedial." *Lasalle* at ¶ 13. "Substantive law" has been

defined as "[t]he part of the law that creates, defines, and regulates the rights, duties, and powers of parties." *Black's Law Dictionary* 1658 (10th Ed.2014). "It is well established that a statute is substantive if it impairs or takes away vested rights, affects an accrued substantive right, imposes new or additional burdens, duties, obligations, or liabilities as to a past transaction, or creates a new right." *Pratte v. Stewart*, 125 Ohio St.3d 473, 2010-Ohio-1860, ¶ 37, citing *Van Fossen* at 107. *See Bielat v. Bielat,* 87 Ohio St.3d 350, 354 (2000) (stating that a retroactive law is one "that is 'made to affect acts or facts occurring, or rights accruing, before it came into force' "); *Hope Academy Broadway Campus v. State Dept. of Edn.*, 10th Dist. No. 07AP-758, 2008-Ohio-4694, ¶ 12, quoting *State ex rel. Matz v. Brown*, 37 Ohio St.3d 279, 281 (1988) ("A statutory provision that attaches a new disability to a past transaction or consideration is not invalid unless the past transaction or consideration created at least a 'reasonable expectation of finality.' "); *State v. Brooks*, 170 Ohio St.3d 1, 2022-Ohio-2478, ¶ 10 (stating that "laws affecting rights, which may be protected by procedure, are substantive in nature.").

{¶ 57} On the other hand, remedial statutes are "are those affecting only the remedy provided" and "include laws which merely substitute a new or more appropriate remedy for the enforcement of an existing right." *Van Fossen* at 107. A remedy has been defined as "[t]he means of enforcing a right or preventing or redressing a wrong; legal or equitable

relief." *Black's* at 1485.[3] Laws altering a tribunal's jurisdiction have also been found not to violate the constitutional ban on retroactive laws. *State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, ¶ 19; *Landgraf* at 274, quoting *Hallowell v. Commons*, 239 U.S. 506, 508 (1916) ("Application of a new jurisdictional rule usually 'takes away no substantive right but simply changes the tribunal that is to hear the case.' "). Additionally, statutes "relating to procedures—rules of practice, courses of procedure, and methods of review—are ordinarily remedial in nature." *Brooks* at ¶ 10, citing *Van Fossen* at 108. *See Pivonka v. Corcoran*, 162 Ohio St.3d 326, 2020-Ohio-3476, ¶ 28 ("Litigants have no right to a particular remedy or procedure, and nothing prohibits the legislature from altering or modifying methods, procedures or remedies as it sees fit."); *Estate of Johnson v. Randall Smith, Inc.*, 135 Ohio St.3d 440, 2013-Ohio-1507, ¶ 20; *Landgraf* at 275 (stating that "[c]hanges in procedural rules," which "regulate secondary rather than primary conduct," may frequently "be applied in suits arising before their enactment without raising concerns about retroactivity"); *Weil v. Taxicabs of Cincinnati, Inc.*, 139 Ohio St. 198, 205 (1942) (stating that remedies "have to do with the methods and procedure by which rights are recognized, protected and enforced, not with the rights themselves"); *Kilbreath v. Rudy*, 16 Ohio St.2d 70 (1968), paragraph two of the syllabus. A "procedural law" has been

---

[3] The distinctions between substantive law, remedies, and procedure have been further explained as follows:

> "A remedy is anything a court can do for a litigant who has been wronged or is about to be wronged. The two most common remedies are judgments that plaintiffs are entitled to collect sums of money from defendants (damages) and orders to defendants to refrain from their wrongful conduct or to undo its consequences (injunctions). The court decides whether the litigant has been wronged under the substantive law that governs primary rights and duties; it conducts its inquiry in accordance with the procedural law. The law of remedies falls somewhere in between procedure and primary substantive rights. Remedies are substantive, but they are distinct from the rest of substantive law, and sometimes their details blur into procedure. For long periods in our past, remedies were casually equated with procedure."

*Black's* at 1485, quoting Douglas Laycock, *Modern American Remedies* 1 (4th Ed.2010). Additionally, and somewhat contradictorily, the following explanation is given: " 'So far as the administration of justice is concerned with the application of remedies to violated rights, we may say that the substantive law defines the remedy and the right, while the law of procedure defines the modes and conditions of the application of one to the other.' " *Black's* at 1658, quoting John Salmond, *Jurisprudence* 476 (10th Ed.1947).

defined as "[t]he rules that prescribe the steps for having a right or duty judicially enforced, as opposed to the law that defines the specific rights or duties themselves." *Black's* at 1398.

{¶ 58} Nearly as often as courts have classified laws as substantive, procedural, or remedial, they have acknowledged the difficulty in precisely defining and distinguishing between these formalistic classifications. *See State ex rel. Holdridge v. Indus. Comm.*, 11 Ohio St.2d 175, 178 (1967) ("It is doubtful if a perfect definition of 'substantive law' or 'procedural or remedial law' could be devised."); *Van Fossen* at paragraph 3 of the syllabus ("While in some cases the line between substantive and remedial may be difficult to ascertain, these terms, as applied, provide readily distinguishable contours."); *Landgraf* at 270 (stating that "[a]ny test of retroactivity will leave room for disagreement in hard cases, and is unlikely to classify the enormous variety of legal changes with perfect philosophical clarity," but noting that "familiar considerations of fair notice, reasonable reliance, and settled expectations offer sound guidance"); *Heyman v. Heyman*, 10th Dist. No. 05AP-475, 2006-Ohio-1345, ¶ 12 ("The distinction between substantive and remedial statutes can be difficult to define, as a statute often contains attributes of both."); *State ex rel. Romans v. Elder Beerman Stores Corp.*, 100 Ohio St.3d 165, 2003-Ohio-5363, ¶ 14; *In re Smith*, 77 Ohio App.3d 1, 12 (6th Dist.1991). Given this difficulty, a review of pertinent cases is warranted.

{¶ 59} The Supreme Court of Ohio in *Van Fossen* considered whether a newly enacted amendment to the workers' compensation act, which placed stricter conditions on employer-employee intentional tort actions, was able to be applied retroactively to cases pending in a court of appeals on the effective date of the statute. At issue was a provision in the new statute providing a definition of the term "substantially certain." The new statute provided that " ' "Substantially certain" means that an employer acts with *deliberate intent* to cause an employee to suffer injury, disease, condition, or death.' " (Emphasis sic.) *Van Fossen*, 36 Ohio St.3d at 108, quoting former R.C. 4121.80(G)(1). However, at the time the claim was pending, the intentional tort requirement of substantial certainty was given the following definition under the common law: " '[A] specific intent to injure is not an essential element of an intentional tort where the actor proceeds despite a perceived threat of harm to others which is *substantially certain* * * * to occur.' " (Emphasis sic.) *Id.* at 108-09, quoting *Jones v. VIP Dev. Co.*, 15 Ohio St.3d 90,

95 (1984). Because the new statute "would remove appellees' potentially viable, court-enunciated cause of action by imposing a new, more difficult statutory restriction upon appellees' ability to bring the instant action," the court held that "this result constitutes a limitation, or denial of, a substantive right, and consequently causes the statute to fall within the ban against retroactive laws established by Section 28, Article II of the Ohio Constitution." *Id.* at 109.

{¶ 60} In *Holdridge*, a workers' compensation claimant had lost function in both eyes, the second one due to an industrial accident. He had been declared permanently and totally disabled in 1947 under a statute that provided that " '[i]n cases of permanent total disability, the award *shall be* sixty-six and two-thirds per cent of the average weekly wages, *and shall continue until the death of such person so totally disabled*,' " and further stated that " '[t]*he loss of* both hands or both arms, or both feet or both legs, or *both eyes*, or of any two thereof, *shall prima facie* constitute total and permanent disability, to be compensated according to the provisions of this section.' " (Emphasis sic.) *Holdridge* at 177-78, quoting G.C. 1465-81. Several years later, Holdridge had through "persistent and determined efforts" developed accommodations that enabled him to have employment. *Id.* at 176. Based on this, the commission declared in 1964 that Holdridge was no longer permanently and totally disabled. However, the statute providing for Holdridge's disability benefits had been amended in 1959 to provide that " '[i]n cases of permanent total disability, the employee shall receive an award to continue until his death' " of certain specified amounts and further stated that " '[t]*he loss of* both hands or both arms, or both feet or both legs, or *both eyes*, or of any two thereof, *constitutes total and permanent disability*, to be compensated according to *this section*.' " (Emphasis sic.) *Holdridge* at 178, quoting R.C. 4123.58.

{¶ 61} The *Holdridge* court examined the distinctions between substantive and procedural aspects of the statutes, stating:

> Each of the two statutes defines the loss of both eyes as a permanent and total disability. This is substantive law. Such a disability imposes a duty or obligation upon the employer under the law of Ohio to meet and overcome the prima facie evidence of total and permanent disability. The employer failed to overcome and, so far as we can determine from the record, did not endeavor to overcome the presumption of total

> disability. The Industrial Commission apparently recognized that the relator suffered a permanent and total disability and allowed compensation under both statutes. It follows, therefore, that since the prima facie proof factor concerned only the manner of arriving at a fact conclusion, upon which the substantive law would operate, it was itself procedural or remedial rather than substantive.

*Id*. at 178. With regard to retroactive application of remedial legislation, the court held that "[l]aws of a remedial nature providing rules of practice, courses of procedure, or methods of review are applicable to any proceedings conducted after the adoption of such laws." *Id*. at paragraph one of the syllabus.

{¶ 62} In *Kilbane*, the court considered amendments to a workers' compensation statute regarding claim settlement hearings that applied to all pending claims for compensation with certain exceptions. The new statute removed the provision for commission hearings on applications for settlement approval. The former statute also permitted claimants to apply independently for the commission approval, whereas the new statute required the employer's signed assent to the application and a settlement agreement as a prerequisite. The court found that the former settlement hearing provisions represented a "course of procedure" in that "[t]hey existed as part of the process by which Kilbane, upon qualifying for compensation, enforced her right to receive it." *Kilbane*, 91 Ohio St.3d at 260. Therefore, the court held that "those provisions were remedial in nature and may be changed or revoked by the legislature without offending the Constitution" because although "entitlement to workers' compensation, being a substantive right, is measured by the statutes in force on the date of her injury, * * * the same is not true for laws affecting only the enforcement of that right." *Id*. at 259-60

{¶ 63} Outside of the workers' compensation context, the court in *Ackison* considered legislation that added certain threshold requirements to asbestos claims. Under the legislation, a party seeking to bring such claim was required to file with the court certain qualifying medical evidence of physical impairment, with such evidence being supported by the written opinion of a competent medical authority stating the claimant's exposure to asbestos was a substantial contributing factor to the medical condition. A claimant's failure to file the required preliminary evidence and medical opinion resulted in the claim being dismissed without prejudice, enabling refiling when the threshold

requirements were met. The legislation provided that the threshold requirements and dismissal provision applied to all asbestos cases pending in Ohio courts, regardless of whether they were filed before or after the effective date of the legislation. The trial court applied the legislation to dismiss Ackison's asbestos claims, but the court of appeals reversed, holding that because Ackison's suit had been filed before the effective date of the statutory changes, she had a vested substantive right to pursue recovery for her husband's illness and death under the statutory scheme in effect at the time she filed her complaint.

{¶ 64} The Supreme Court of Ohio disagreed, stating the amended statutes were procedural, not substantive because they " 'do not relate to the rights and duties that give rise to this cause of action or otherwise make it more difficult for a claimant to succeed on the merits of a claim' " but instead " 'pertain to the machinery for carrying on a suit.' " *Ackison*, 2008-Ohio-5243, at ¶ 16, quoting *Norfolk S. Ry. Co. v. Bogle*, 115 Ohio St.3d 455, 2007-Ohio-5248, ¶ 17. The court recognized that the amended statutes "establish[ed] 'a procedural prioritization' of asbestos-related cases" by " 'prioritiz[ing] the administration and resolution of a cause of action that already exists.' " *Id.* at ¶ 17, quoting *Norfolk* at ¶ 16. The court concluded that the statutes placed " '[n]o new substantive burdens' " on claimants, but " 'merely substitute[d] a new or more appropriate remedy for the enforcement of an existing right.' " *Id.*, quoting *Cook*, 83 Ohio St.3d at 411.

{¶ 65} As the foregoing recitation of cases demonstrates, the "readily distinguishable contours" between substantive and remedial laws oftentimes become blurred when the laws in question appear to contain both substantive and procedural characteristics. *Van Fossen* at paragraph 3 of the syllabus. Here, relator argues the retroactive application of R.C. 4123.58(G) is substantive because it creates a new evidentiary burden not in place at the time relator's third application for PTD compensation was filed. The commission argues R.C. 4123.58(G) is remedial in nature because it "establishes a process that must be followed by an injured worker and, in turn, considered by the commission, to warrant adjudicating another application for PTD benefits." (Comm. Brief at 14.)  In support of this, the commission points to *Holdridge* in arguing that the court in that case found an amendment to R.C. 4123.58 to be remedial rather than substantive in nature. In order to distinguish whether the statute at issue in

this matter is substantive or remedial, it is necessary to understand the differences between the state of the law before and after H.B. 75.

{¶ 66} Prior to H.B. 75, the Supreme Court of Ohio held that "a showing of new and changed circumstances is not 'a prerequisite to commission consideration of a subsequent application for permanent total disability compensation after an initial denial.' " *State ex rel. Quarto Mining Co. v. Foreman*, 79 Ohio St.3d 78, 86 (1997), quoting *State ex rel. Youghiogheny & Ohio Coal Co. v. Indus. Comm.*, 65 Ohio St.3d 351, 352-53 (1992). *See State ex rel. Pactive Corp./Tenneco Packaging v. Harvey*, 10th Dist. No. 03AP-1272, 2004-Ohio-5158, ¶ 5. Notably, in *Youghiogheny*, the claimant's second application for PTD compensation was granted even though it was filed a mere four weeks after the commission denied his first application.

{¶ 67} Under the new law, following a final order of the commission denying a prior application for PTD, a claimant must "present evidence of new and changed circumstances *before the industrial commission may consider a subsequent application.*" (Emphasis added.) R.C. 4123.58(G). The phrase "new and changed circumstances" is not defined under the statute. However, this concept is not new to the law of workers' compensation, having application with regard to the commission's exercise of continuing jurisdiction under R.C. 4123.52 and claims for an increase in percentage of permanent partial disability ("PPD") under R.C. 4123.57(A).

{¶ 68} Pursuant to R.C. 4123.52, the commission has continuing jurisdiction over each case and, subject to certain temporal limitations, it "may make such modification or change with respect to former findings or orders with respect thereto, as, in its opinion is justified." R.C. 4123.52(A). Despite this "broad statutory language," the Supreme Court of Ohio has construed R.C. 4123.52 to limit the commission's continuing jurisdiction, holding that "the prerequisites for its exercise are (1) new and changed circumstances, (2) fraud, (3) clear mistake of fact, (4) clear mistake of law, or (5) error by an inferior tribunal," despite the absence of statutory language to that effect. *State ex rel. Knapp v. Indus. Comm.*, 134 Ohio St.3d 134, 2012-Ohio-5379, ¶ 13, citing *State ex rel. Nicholls v. Indus. Comm.*, 81 Ohio St.3d 454, 458-59 (1998), citing *State ex rel. Cuyahoga Hts. Local School Dist. Bd. of Edn. v. Johnston*, 58 Ohio St.2d 132 (1979). *See State ex rel. Griffey v. Indus. Comm.*, 125 Ohio St. 27, 31 (1932) (stating that G.C. 1465-86, which allowed the

commission to " 'from time to time make such modification or change with respect to former findings or orders with respect thereto, as, in its opinion may be justified' * * * could not have been intended to take away all finality to the orders and findings of the commission"). Similar to R.C. 4123.52, applications for an increase in PPD must be "supported by substantial evidence of new and changed circumstances developing since the time of the hearing on the original or last determination." R.C. 4123.57(A).

{¶ 69} Given the inherently factual nature of the determination, the parameters of what type and quantity of evidence is sufficient to establish "new and changed circumstances" have not been precisely defined. Instead, the commission and courts have examined this on a case-by-case basis, developing some guiding principles along the way. *See State ex rel. Ross v. Indus. Comm.*, 118 Ohio St.3d 73, 2008-Ohio-1739, ¶ 17 (stating that "the mere submission of new evidence is not automatically a new and changed circumstance"); *State ex rel. Keith v. Indus. Comm.*, 62 Ohio St.3d 139, 141-42 (1991) (finding that establishing new and changed circumstances entails demonstrating that "conditions have changed subsequent to the initial award," and not simply evidence which was "newly acquired"); *State ex rel. Gen. Motors Corp., Chevrolet Motor Div. v. Indus. Comm.*, 54 Ohio St.2d 333, 334 (1978) (holding that "a medical report or reports concluding percentage increases, beyond percentages previously reported in connection with the original claim, is not an improper consideration under R.C. 4123.57(B) of 'new and changed circumstances developing since the time of the hearing on the original or last determination' "); *State ex rel. Akron Paint & Varnish, Inc. v. Gullotta*, 131 Ohio St.3d 231, 2012-Ohio-542, ¶ 17 (stating that "the worsening of an existing medical condition or a newly allowed medical condition often serves as new and changed circumstances justifying the exercise of continuing jurisdiction to modify a previous order"); *Knapp* at ¶ 17 (applying a previously effective industrial commission resolution pertaining to the exercise of continuing jurisdiction pursuant to R.C. 4123.52 to find that "[n]ew and changed circumstances means 'there exists newly discovered evidence' "); *State ex rel. Rocktenn Co. v. Long*, 10th Dist. No. 12AP-862, 2013-Ohio-5296, ¶ 8.

{¶ 70} Review of R.C. 4123.58(G) reveals that it is remedial, not substantive because it is concerned with "the methods and procedure by which rights are recognized, protected and enforced, not with the rights themselves." *Weil*, 139 Ohio St. at 205. First,

R.C. 4123.58(G) does not foreclose a claimant's ability to make a subsequent application for PTD after the failure of a prior application. Instead, similar to the prima facie filing requirements considered in *Ackison*, it adds a procedural component requiring a claimant to make an initial showing sufficient to permit consideration of the PTD application. Importantly, this preliminary determination of new and changed circumstances occurs *before* the commission is permitted to consider the merits of the application and does not change the analysis of the merits of the PTD application.

{¶ 71} In this way, and perhaps most importantly with regard to retroactivity, R.C. 4123.58 does not change the burden, nature, or quantum of proof needed to establish entitlement to PTD compensation. The burden remains on the applicant to prove permanent total disability by establishing under a preponderance of the evidence that the disability is permanent and that the inability to work is causally related to the allowed conditions. Ohio Adm.Code 4121-3-34(D)(3)(a); *Sheppard*, 2014-Ohio-1904, at ¶ 16. The pertinent inquiry remains the same—whether the applicant engages in or is medically capable of sustained remunerative employment. *Compare Hearing v. Wylie*, 173 Ohio St. 221 (1962), paragraph two of the syllabus (holding that the alteration of the definition of "injury" by an amendment, which applied to claims pending at the time the amendment became effective, was unconstitutionally retroactive because a worker's right "to compensation for an injury is a substantive right, and a change by the General Assembly in the statutory definition of 'injury' theretofore not compensable is a change in a substantive right"); *Van Fossen* at 108-09.

{¶ 72} Rather than taking away or impairing a substantive right to PTD compensation, R.C. 4123.58(G) creates a procedure or mechanism for enforcement of that right by which subsequent PTD applications are to be adjudicated following the denial of an initial application. Thus, the requirement under R.C. 4123.58(G) to demonstrate new and changed circumstances " 'do[es] not relate to the rights and duties that give rise to this cause of action or otherwise make it more difficult for a claimant to succeed on the merits of a claim' " for PTD compensation but instead " 'pertain[s] to the machinery for carrying on a suit' " by regulating secondary conduct. *Ackison*, 2008-Ohio-5243, at ¶ 16, quoting *Norfolk*, 2007-Ohio-5248, at ¶ 17. *See Holdridge* at 178 (stating that because the "prima facie proof factor concerned only the manner of arriving at a fact conclusion, upon which

the substantive law would operate, it was itself procedural or remedial rather than substantive"); *Romans*, 2003-Ohio-5363, at ¶ 20 (finding that amendment altering time limitations with respect to the continuing jurisdiction of the commission under R.C. 4123.52 was remedial because the alteration "did not alter claimants' already established right to participate" but instead fashioned a more appropriate remedy for the enforcement of that right); *Longbottom v. Mercy Hosp. Clermont*, 137 Ohio St.3d 103, 2013-Ohio-4068, ¶ 26; *Morgan v. W. Elec. Co.*, 69 Ohio St.2d 278, 281 (1982), fn. 5; *Kilbane* at 259-60.

{¶ 73} Based on the foregoing, the magistrate concludes the application of R.C. 4123.58(G) to pending claims does not violate the constitutional prohibition on retroactive laws. Therefore, it was not error for the commission to apply R.C. 4123.58(G) to relator's claim as it was pending when the statutory provision became effective on September 28, 2021.

**D. Whether the Requirements of R.C. 4123.58(G) Were Met**

{¶ 74} Having found R.C. 4123.58(G) is not unconstitutionally retroactive, the remaining question is whether the SHO erred in concluding relator failed to meet his burden under the statute of presenting evidence of new and changed circumstances to enable the commission to consider the application. Relator argues he presented evidence he was employed by a temporary agency for several weeks in 2019 and 2020 and states that he testified at the hearing that the "physical demands of the light duty jobs were not sustainable and caused a flare-up of his pain complaints." (Relator's Brief at 6.) Relator also points to Dr. Murdock's notes following relator's January 21, 2021 office visit, including relator's complaint of phantom limb pain and a loss of function, range of motion, and grip strength in the right upper extremity.

{¶ 75} The commission is "exclusively responsible for assessing the weight and credibility of evidence." *State ex rel. George v. Indus. Comm.*, 130 Ohio St.3d 405, 2011-Ohio-6036, ¶ 11, citing *State ex rel. Burley v. Coil Packing, Inc.*, 31 Ohio St.3d 18 (1987). Given the commission's role as the exclusive fact-finder, this court "cannot second guess the commission's judgments either as to witness credibility or on the proper weight to accord particular evidence." *State ex rel. Welsh Ents., Inc. v. Indus. Comm.*, 10th Dist. No.

19AP-127, 2020-Ohio-2801, ¶ 26. In reviewing a decision of the commission regarding new and changed circumstances, a relator has the burden of showing the commission abused its discretion by entering an order not supported by any evidence in the record. *Akron Paint*, 2012-Ohio-542 at ¶ 11 (finding commission abused its discretion in determining there existed evidence to support a finding of new and changed circumstances to exercise continuing jurisdiction under R.C. 4123.52).

{¶ 76} Relator's arguments essentially present an invitation for this court to reweigh the evidence. However, that is not the role of this court in an action in mandamus. *State ex rel. Casey v. Indus. Comm. of Ohio*, 10th Dist. No. 20AP-247, 2022-Ohio-532, ¶ 21 (declining to reweigh the evidence where relator asserted commission erred in finding insufficient evidence of new and changed circumstances). No transcript of the hearing appears in the record of this matter, but the SHO's order notes arguments concerning relator's work experience in 2019 and 2020. However, the SHO found the "limited attempt to return to work for a few days over the course of two years is, in and of itself, not significant enough to be considered a new and changed circumstance in this claim." (R. at 159.)

{¶ 77} The SHO reviewed the prior orders denying PTD compensation and found there were no additional medical allowances since the last application. Furthermore, the SHO noted relator had not undergone any surgeries or substantial medical procedures in that time and had not requested any TTD compensation since 2002, leading the SHO to find that relator's medical conditions were "essentially stable." (R. at 158.) The SHO also referred to the medical documentation in the claim file, particularly noting the periods when relator stated he was employed and specifically mentioning medical documentation from Dr. Murdock. The SHO found relator's "limited medical treatment during this time appears to be essentially maintenance only," similar to the findings in the 2008 report in which the SHO stated that relator's course of medical care had been much the same over the prior five years, consisting of chiropractic manipulation, medications, acupuncture, massage, and physical therapy. (R. at 159.) Recognizing the commission's role in assessing the weight and credibility of the evidence and considering the existence of some evidence in the record to support its conclusion, the magistrate finds it was not an abuse of discretion to conclude relator failed to present sufficient evidence of new and changed

circumstances. Therefore, having failed to demonstrate new and changed circumstances, R.C. 4123.58(G) precluded consideration of relator's third application for PTD compensation.

{¶ 78} Finally, relator argues he is entitled to relief under *Gay*, 68 Ohio St.3d 315, because his physical and psychological impairments, considered in conjunction with the *Stephenson* factors, can only lead to the conclusion that he is permanently and totally disabled. The commission responds that relator's reliance on *Gay* is misplaced because medical experts concluded relator was capable of work with some limitations. Pursuant to R.C. 4123.58(G), the demonstration of new and changed circumstances is a prerequisite to consideration of a subsequent application for PTD compensation. Without meeting this requirement and the commission's consideration of the merits of a PTD application in the first instance, this court is unable to reach the merits of relator's third PTD application.

## E. Conclusion

{¶ 79} Based on the foregoing, relator has not demonstrated a clear legal right to the requested relief or that the commission is under a clear legal duty to provide such relief. Accordingly, it is the decision and recommendation of the magistrate that relator's request for a writ of mandamus should be denied.

/S/ MAGISTRATE
JOSEPH E. WENGER IV

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.